IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

Civil Action No.

GREAT AMERICAN INSURANCE COMPANY,

**Plaintiff,**

v.

ENERGES SERVICES, LLC,

**Defendant.**

## COMPLAINT

Plaintiff, Great American Insurance Company ("Plaintiff," "GAIC," or "Surety"), through its undersigned counsel, submits its Complaint against Defendant Energes Services, LLC.

### I.   PARTIES

1. GAIC is a company organized and incorporated under the laws of the State of Ohio; GAIC's principal place of business is 301 E. Fourth Street, Cincinnati, Ohio 45202.

2. Energes Services, LLC d/b/a Energes Environmental ("Energes") is a Colorado limited liability corporation that, at all times alleged herein, conducted business in the State of Colorado and has a principal place of business at 1328 East 18th Street, Greeley, Colorado 80631.

3. Upon information and belief based on documents provided to GAIC to induce GAIC to issue bonds on behalf of Energes (including, but not limited to, the Operating Agreement of Energes that lists the names of the members of the LLC, their capital contributions, and the units/classes of shares owned), the members of Energes Services, LLC are: Riata Roustabout &

Backhoe Service, Inc.; Energes Investment Opportunity, L.P.; D & J Services, Inc., Eric Yancey, and The Peltes Group, LLC.

4. Riata Roustabout & Backhoe Service, Inc. is a Colorado corporation that, at all times alleged herein, conducted business in the State of Colorado and has a principal place of business of 1328 East 18th Street, Greeley, CO 80631.

5. Energes Investment Opportunity, L.P. does not appear in any Colorado secretary of state records, but, upon information and belief, the L.P. is an affiliate of Energes and was incorporated and has a principal place of business at the same address as Energes.

6. D & J Services, Inc. is a Colorado corporation that, at all times alleged herein, conducted business in the State of Colorado and has a principal place of business of 1328 East 18th Street, Greeley, CO 80631.

7. Upon information and belief, Eric Yancey is an individual whose last known residence address is 42nd Street, Greeley, Colorado 80634 and who has expressed an intent to remain in Colorado indefinitely.

8. The Peltes Group, LLC is a Colorado corporation that, at all times alleged herein, conducted business in the State of Colorado and has a principal place of business of 9447 South Star Hill Circle, Lone Tree, Colorado 80124. Upon information and belief, the sole member of the Peltes Group, LLC is Terry Peltes, a Colorado resident who resides at 9447 S. Star Hill Circle, Lone Tree, CO 80124 and has expressed an intent to remain in Colorado indefinitely.

## II. JURISDICTION/VENUE

9. GAIC hereby incorporates by reference all the allegations contained above as though set forth herein.

10. This Court has personal jurisdiction over the Defendant because the Defendant transacted business in and around Denver, Colorado, including, but not limited to, performing construction work in and around Denver and entering into contracts with GAIC in which the Defendant promised to post collateral with GAIC as set forth in the contracts and to reimburse GAIC for, among other things, any losses, expenses, payments, attorney's fees, costs incurred by GAIC in the event GAIC incurs losses as a result of issuing construction surety bonds on behalf of the Defendant. As such, the Defendant and its members purposefully availed themselves of the benefits and privileges of conducting business in Colorado.

11. This Court has original subject matter jurisdiction over GAIC's claims pursuant to 28 U.S.C. § 1332 (diversity) because the amount of GAIC's claims against Defendant exceeds $75,000 (GAIC seeks collateral in the amount of $700,000), and GAIC is a citizen of a different state than the Defendant and its members.

12. As set forth above, GAIC is a citizen of Ohio, where GAIC is incorporated and where its principal place of business is located. The Defendant's members are each domiciled in Colorado and therefore a citizen of Colorado.

13. GAIC has conducted a diligent search to ascertain the domicile of the members of Defendant, including, but not limited to, reviewing its underwriting files, reviewing the Secretary of State records, reviewing court filings, and conducting online research. Based on those searches, GAIC affirmatively alleges in good faith that neither Defendant nor any of its members is a citizen of Ohio. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 106-108 (3rd Cir. 2015).

14. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to GAIC's claim occurred in or around Denver, CO.

## III. GENERAL ALLEGATIONS

15. GAIC hereby incorporates by reference all the allegations contained above as though set forth herein.

**A.     The Bonds**

16. GAIC, as surety, has issued at least the following construction payment and performance bonds ("Bonds") on behalf of Energes, as principal, for the following construction projects ("Projects"):

| **Obligee** | **Project** | **Bond Amount** |
|---|---|---|
| Centerra Metropolitan District #1 | Centerra Parcel 504 Public Landscape Improvements, CEN-PCL504 | $754,223 |
| Hamilton Construction Co. | SH 60 Over the South Platte River, Agreement No. 1825-40198 | $848,896 |
| ECI Construction Site Management, Inc. | Loveland Sports Park Phase 2, Project No. 18-15, Subcontract No. 18-15S003 | $134,168 |
| Adams County, Colorado | Twin Lakes Park Improvements, JTH-2017.458 | $1,924,971 |
| Adams County, Colorado | Gateway Plaza Park, IFB No. 2018.430 | $525,559 |
| City of Westminster, Colorado | Big Dry Creek Signal & Trail Improvements, City Project No. PR&L 8-31-0-2017 | $2,705,604 |

17. Pursuant to the terms of the Bonds and prevailing law, GAIC has guaranteed that if Energes fails to take certain actions, the underlying bonded obligation will become due, and GAIC will pay the debt(s).

**B.     The Indemnity Agreement**

18. As consideration for GAIC's issuance of the Bonds and other consideration, on or about July 27, 2016, Energes executed an Agreement of Indemnity ("Indemnity Agreement") in

favor of GAIC. A copy of the Indemnity Agreement is attached as Ex. 1 and incorporated herein by reference.

19. The Indemnity Agreement provides, in pertinent parts:

> WHEREAS, the Undersigned may desire or be required to give or procure surety bonds, undertakings, bid or commitment letters or instruments of guarantee, and to renew, continue or substitute the same, hereinafter called Bonds, for itself or any present or future wholly or partially owned subsidiary or any subsidiary of a subsidiary of the Undersigned; or joint ventures or partnerships in combination with each other, now in existence or which may hereafter be created or acquired; or for any other entity upon written request of the Undersigned, whether in its own name or as co-adventurer with others; and/or the Undersigned has a substantial, material and beneficial interest in the obtaining of the Bond(s) or in the Surety's renewing the Bonds(s) or in the Surety's refraining from canceling said Bond(s); and
>
> WHEREAS, at the request of the Undersigned and upon the express understanding that this Agreement of Indemnity (hereinafter Agreement) should be given, the Surety has executed or procured to be executed, and may from time to time hereafter execute or procure to be executed, Bonds on behalf of the Undersigned.
>
> NOW, THEREFORE, in consideration of the premises and for other good and valuable consideration, the receipt and sufficiency of which is expressly acknowledged by the Undersigned, the Undersigned for themselves, their heirs, executors, administrators, successors and assigns, jointly and severally and/or collectively, hereby covenant and agree with the Surety, its successors and assigns, as follows:
>
> PARTIES
>
> **INDEMNITY/EXONERATION**
>
> SECOND: The Undersigned, jointly and severally, shall exonerate, indemnify, hold harmless and keep the Surety indemnified from and against any and all liability for losses, costs, and/or expenses of whatsoever kind or nature (including, but not limited to, interest, court costs, consultant or expert fees, and counsel fees) and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of being requested to execute or procure, or having executed or procured the execution of Bonds on behalf of any of the Undersigned, (2) By reason of the failure of the Undersigned to perform or comply with any of the covenants and conditions of this Agreement or (3) In enforcing any of the terms, covenants or conditions of this Agreement. Payment by reason of the aforesaid causes shall be made to the Surety by the Undersigned, upon demand by the Surety, as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefor. The amount of such payment to the Surety by the Undersigned shall be determined by the Surety and the Surety's demand for payment hereunder may, at the Surety's option, be in addition to and not in lieu of or substitution for any other collateral that may have been previously deposited with Surety by or on behalf of the Undersigned. The Surety shall have the right to use the payment, or any part thereof, in payment or settlement of any liability, loss or expense for which the Undersigned would be obligated to indemnify the Surety under the terms of this Agreement. The Surety shall have no obligation to invest or to provide a return on the payment or any other collateral deposited with the Surety. The Undersigned shall be entitled to the refund of any unused portion of the payment upon termination of the liability of the Surety on all Bonds and the performance by the Undersigned of all obligations to the Surety under the terms of this Agreement. The Surety's demand shall be sufficient if sent by registered or certified mail, by facsimile transmission, or by personal service to the Undersigned at the addresses stated herein, or at the addresses of the Undersigned last known to the Surety, regardless of whether such demand is actually received.
>
> The Undersigned acknowledge that the failure of the Undersigned to deposit with the Surety, immediately upon demand, the sum demanded by the Surety as payment shall cause irreparable harm to the Surety for which the Surety has no adequate remedy at law. The Undersigned agree that the Surety shall be entitled to injunctive relief for specific performance of any or all of the obligations of the Undersigned under this Agreement including the obligation to pay to the Surety the sum demanded and hereby waive any claims or defenses to the contrary. In the event of any payment of any kind by the Surety, the Undersigned further agree that in any accounting between the Surety and the Undersigned, the Surety shall be entitled to charge for any and all disbursements made by the Surety in good faith in and about the matters herein contemplated by this Agreement under the belief that the Surety is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient for the Surety to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers, invoices, an affidavit or other evidence of any such payments made by the Surety shall be prima facie evidence of the fact and amount of the Undersigned's liability to the Surety.
>
> Each of the Undersigned authorizes and empowers any attorney in any state of the United States, at the request of Surety, to waive the issuing and service of process and to appear for and confess judgment against any of the Undersigned for any sum or sums due under this Agreement, together with the costs of suit, without stay of execution, waiving inquisition and condemnation of real estate; and to release all errors and waive all right of appeal and stay of execution on behalf of the Undersigned.

## ASSIGNMENT

THIRD: The Undersigned hereby consenting, will assign, transfer and set over, and do hereby assign, transfer and set over to the Surety, as collateral, to secure the obligations in any and all of the paragraphs of this Agreement and any other indebtedness and liabilities of the Undersigned to the Surety, whether heretofore or hereafter incurred, the assignment to become effective retroactive to the date of the first Bond, but only in the event of (1) any abandonment, forfeiture or breach or alleged breach of any contracts referred to in the Bonds or of any breach or alleged breach of any Bonds; or (2) any breach or alleged breach of the provisions of any of the paragraphs of this Agreement; or (3) a default or alleged default in discharging such other indebtedness or liabilities when due; or (4) any assignment by the Undersigned for the benefit of creditors, or of the appointment or of any application for the appointment of a receiver or trustee for the Undersigned whether insolvent or not; or (5) any proceeding which deprives the Undersigned of the use of any of the machinery, equipment, plant, tools or material referred to in section (b) of this paragraph; or (6) the Undersigned's dying, absconding, disappearing, incompetency, being convicted of a felony, or imprisonment if the Undersigned be an individual:

(a) All the rights of the Undersigned in, and growing in any manner out of the Bonds or any contracts referred to in the Bonds;

(b) All the rights, title and interest of the Undersigned in and to all machinery, equipment, vehicles, plant, tools and materials which are now, or may hereafter be, about or upon the site or sites of any and all of the contractual work referred to in the Bonds or elsewhere, including materials purchased for or chargeable to any and all contracts referred to in the Bonds, materials which may be in process of construction, in storage elsewhere, or in transportation to any and all of said sites;

(c) All the rights, title and interest of the Undersigned in and to all subcontracts let or to be let in connection with any and all contracts referred to in the Bonds, and in and to all surety bonds supporting such subcontracts;

(d) All actions, causes of actions, claims and/or the proceeds therefrom and any demands whatsoever which the Undersigned may have or acquire against any party, including but not limited to owners, obligees, subcontractors, laborers or materialmen, architects, engineers or any person furnishing or agreeing to furnish or supply labor, material, supplies, machinery, tools or other equipment in connection with or on account of any and all contracts referred to in the Bonds; and against any surety or sureties of any party including, but not limited to, prime contractors, subcontractors, laborers, or materialmen;

(e) Any and all percentages retained and any and all sums that may be due or hereafter become due on account of any and all contracts referred to in the Bonds and all other contracts whether bonded or not in which the Undersigned has an interest;

(f) any and all accounts receivable, marketable securities, rents, proceeds of sale, instruments, chattel paper, letters of credit, documents of title, bills of lading, federal tax refunds, state and local tax refunds, furniture and fixtures, inventory, and general intangibles;

(g) any and all policies of insurance;

(h) all intellectual property, including licenses, patents, copyrights, and trade secrets;

(i) all limited or general partnership interests.

The Undersigned agree that the Surety may add such schedules to this Agreement as it deems advisable, describing more specifically items of security covered by this Assignment.

Notwithstanding the foregoing, Undersigned further agree to execute and deliver to the Surety, upon its request, such further or additional instruments as may be necessary or desirable in the Surety's sole and absolute discretion to permit or facilitate either the filing of this Agreement as a Financing Statement and/or Security Agreement, or the filing of separate Financing Statements and/or Security Agreements, based upon this Agreement, in such states, counties, and/or other places as the Surety may deem necessary or advisable.

## BOOKS AND RECORDS

TENTH: At any time, and until such time as the liability of the Surety under any and all Bonds is terminated, the Surety shall have the right to examine and copy the books, records, and accounts of the Undersigned; and any bank depository, materialman, supply house, or other person, firm or corporation, when requested by the Surety, is hereby authorized and directed by the Undersigned to furnish the Surety with any information requested including, but not limited to, the status of the work under contracts being performed by the Undersigned, the condition of the performance of such contracts and payments of accounts. The Undersigned agree to provide any additional releases, requests, waivers or any other documents required in order to allow the Surety access to the requested information.

## SETTLEMENT

FOURTEENTH: The Surety shall have the right to adjust, settle or compromise any claim, demand, suit, arbitration proceeding or judgment upon the Bonds. The liability of the Undersigned to the Surety under this Agreement shall extend to and include all amounts paid by the Surety under the belief that: (1) the Surety was or might be liable therefor; or (2) such payments were necessary or advisable to protect any of the Surety's rights or to avoid or lessen Surety's liability or alleged liability. Further, the liability of the Undersigned to the Surety under this Agreement shall include interest from the date of Surety's payment at the maximum rate permitted in the jurisdiction in which this Agreement is enforced, or is enforceable. Further the Surety shall have the right to adjust, settle, prosecute, compromise or pursue recovery in connection with any claim, demand, suit, arbitration proceeding or judgment in connection with any contract whether bonded or not, or in connection with any matters that are the subject of Paragraph 3 "Assignment" of this Agreement.

## GENERAL PROVISIONS

A) The Undersigned will pay to the Surety in such manner as may be agreed upon all premiums and charges of the Surety for the Bonds in accordance with its rate filings, its manual of rates, or as otherwise agreed upon, until the Undersigned shall serve evidence satisfactory to the Surety of its discharge or release from the Bonds and all liability by reason thereof.

B) The Undersigned agree that Surety may add additional parties or release parties to this Agreement by Rider, Endorsement, Amendment or by any other means acceptable to Surety, and the Undersigned shall cooperate with Surety in accordance with Paragraph 1 "Parties" of this Agreement. Further, the Undersigned agree that the release of any party to this Agreement shall not release any other party. The failure of any party to perform any of its obligations under this Agreement shall not excuse the performance of any other party under this Agreement.

C) Each and every right, remedy, power and/or entitlement afforded the Surety pursuant to this Agreement, and/or in any other agreements among the Surety and the Undersigned, or by law, equity or statute, shall be cumulative, and the exercise by the Surety of any right, power or remedy shall not preclude the Surety's simultaneous or subsequent exercise of any and all other rights, powers and/or remedies. No failure or delay by the Surety to exercise any right, power or remedy provided pursuant to this Agreement shall impair or be construed to be a waiver of the Surety's ability or entitlement to exercise any other right, power or remedy. The exercise of, or the failure to exercise any right, power or remedy at any time, whether derived from this Agreement, any other agreement, under law or in equity, shall not be deemed to be an election of remedy or a waiver of any other right, power or remedy.

D) This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. The Undersigned agree that there have been no oral or other agreements of any kind as a condition precedent or to induce the execution and delivery of this Agreement by any party.

E) Undersigned hereby authorize the Surety to settle or compromise any claim based upon this Agreement with any Undersigned individually, or with some but fewer than all Undersigned and such settlement or compromise shall not affect the liability of any other parties to this Agreement.

F) Throughout this Agreement, all references in the singular shall also refer to the plural, and vice versa, all references in the conjunctive shall also refer to the disjunctive, and vice versa, and all references in the past tense shall also refer to the present or future tense, and vice versa.

G) The Undersigned shall give Surety prompt notice of any claim, demand, suit, arbitration proceeding or other action which purports to be instituted or asserted on or against any Bond and shall fully cooperate with the Surety in the defense thereof.

H) The Undersigned agree that no right, remedy, power or entitlement granted to Surety pursuant to Agreement creates any fiduciary duty to the Undersigned. The Undersigned agree and understand that a fiduciary duty owed from Surety to the Undersigned would be inconsistent with the purposes of this Agreement.

By executing this Agreement you are bound jointly and severally to the Surety with respect to all Bonds executed, provided or procured or to be executed, provided or procured by Surety at any time in behalf of any of the Undersigned, and with respect to all undertakings of this Agreement.

The Undersigned hereby authorize the Surety to obtain credit reports and histories and to confirm bank balances claimed, and all other items on any balance sheet or income statement furnished until all liability of the Surety for any suretyship or claim obligations expire.

THE UNDERSIGNED REPRESENT TO THE SURETY THAT THEY HAVE CAREFULLY READ THIS ENTIRE AGREEMENT AND THAT THERE ARE NO OTHER AGREEMENTS OR UNDERSTANDINGS WHICH IN ANY WAY LESSEN OR MODIFY THE OBLIGATIONS SET FORTH HEREIN.

20.     By virtue of the definitions and representations in each of the indemnity agreements, the Defendant is, inter alia, obligated to post collateral with GAIC, cooperate with GAIC's investigation into claims, and is jointly and severally liable to GAIC as set forth herein.

C.      **GAIC's Concerns About Exposure, Receipt of Claims, and Collateral Demands**

21.     To date, GAIC has received payment bond claims on the Projects alleging that Energes failed to properly pay for labor and materials. The claims currently total at least $506,857.10.

22.     GAIC has also received indication that Energes has been or may be terminated on the Centerra Metropolitan District No. 1 Project for Centerra Parcel 504, and GAIC is therefore exposed to additional liability on that Bond.

23.     GAIC is in the process of reviewing and analyzing the various claims and has requested certain information from Defendant regarding any defenses to the claims, and Defendant's intentions and ability to resolve the claims.

24.     In light of these claims, GAIC is being exposed to the possibility of substantial losses under its Bonds, for which the Defendant is liable.

25.     GAIC has demanded access to Defendant's books and records so that GAIC can assess its actual and potential liability under the Bonds. Defendant has not granted GAIC access to books and records.

26.     A copy of GAIC's August 21, 2019 letter to Defendant request for access to Defendant's books and records (among other information) is attached as Ex. 2 and incorporated herein by reference.

27. GAIC did not receive a substantive response to this request, nor access to Defendant's books and records.

28. On September 10, 2019, GAIC demanded that Defendant post collateral in the amount of $700,000. A copy of GAIC's September 10, 2019 collateral demand is attached as Ex. 3 and incorporated herein by reference.

29. The Defendant has not posted any collateral with Defendant.

30. The Defendant's failure to respond to GAIC's letters and collateral demands, along with other information received from Defendant, has exacerbated GAIC's concerns about Defendant's ability and intention to satisfy bonded obligations.

31. GAIC has incurred attorney's fees, costs, and expenses and expects to continue incurring attorney's fees, costs, and expenses on a near daily basis until this matter is resolved.

32. GAIC is further concerned that Energes may have received funds on bonded contracts and, in derogation of GAIC's rights, used such funds to pay non-bonded obligations.

33. GAIC is concerned that Energes may have likewise intentionally failed to pay bonded obligations to service other debt and/or pay non-bonded obligations, again in derogation of GAIC's rights.

34. GAIC is concerned that there will be a shortfall of funds available to Energes to complete its projects.

35. All conditions precedent to bringing and maintaining this action have been met or have occurred.

## FIRST CLAIM FOR RELIEF
### (Breach of Express Contract)

36. GAIC hereby incorporates by reference all the allegations contained above as though fully set forth herein.

37. The Defendant entered into valid and enforceable contracts, the Indemnity Agreement, with GAIC.

38. Sufficient consideration supports the Indemnity Agreement.

39. GAIC substantially performed its obligations, if any, under the Indemnity Agreement.

40. The Defendant failed to meet its obligations under the Indemnity Agreement, which constitutes a material breach.

41. Defendant's breach of the Indemnity Agreement has damaged GAIC, and Defendant is liable to GAIC for all losses and expenses incurred by GAIC as a result of the issuance of the Bonds, including, but not limited to, bond payments, attorney's fees, consultant fees, expenses, and costs, all as provided by the terms of the Indemnity Agreement.

## SECOND CLAIM FOR RELIEF
### (Common Law Indemnification)

42. GAIC hereby incorporates by reference all the allegations contained above as though fully set forth herein.

43. Energes, as the principal under the Bonds, is required to indemnify and hold GAIC harmless from and against any and all liabilities, losses and expenses of any kind of nature, including, but not limited to, interest, court costs, expenses and attorney and consultant fees, imposed upon, sustained or incurred by GAIC on account of the issuance of the Bonds.

44. GAIC has made demand upon Energes to be indemnified and placed in funds for all losses sustained or to be sustained as a result of the issuance of the Bonds.

45. Energes has failed to meet its obligations to GAIC under Colorado law.

46. Energes's failure to meet its obligations to GAIC under Colorado law has damaged GAIC, and GAIC is entitled to damages.

### THIRD CLAIM FOR RELIEF
### (Injunctive Relief – Specific Performance)

47. GAIC hereby incorporates by reference the allegations contained above as though fully set forth herein.

48. Pursuant to the Indemnity Agreement, the Defendant is required to place GAIC in sufficient funds to cover any and all losses or expenses, including attorney's and consultant's fees and costs, incurred or to be incurred by GAIC as a result of the issuance of the Bonds.

49. There is no adequate remedy at law for GAIC to recover the benefit of the Indemnity Agreement.

50. GAIC has performed any obligations owed to the Defendant under the Indemnity Agreement and/or Bonds.

51. GAIC requests specific performance on the provisions of the Indemnity Agreement which require Defendant to grant access to books and records and/or to place GAIC in sufficient funds to cover any possible liability or loss for which Defendant is or will be obligated to indemnify GAIC under the terms of the Indemnity Agreement.

52. If Defendant does not or cannot place GAIC in sufficient funds, GAIC requests an equitable lien in the amount of $700,000, plus attorney's fees ("Lien Amount") on any real property owned by the Defendant.

53. If the Defendant does not or cannot place GAIC in sufficient funds, GAIC should also be given a valid equitable security interest, as collateral security in the Lien Amount, on any and all rights, title and interest of Defendant in and to all items, property, documents, etc. identified in the Assignment (Third) paragraph of the Indemnity Agreement.

**FOURTH CLAIM FOR RELIEF**
**(Injunctive Relief – *Quia Timet*)**

54. GAIC hereby incorporates by reference the allegations contained above, as though fully set forth herein.

55. Under the equitable doctrine of *quia timet*, GAIC is entitled to have Defendant place funds or other security with GAIC sufficient to cover any and all claims, demands and liability for losses, costs, and expenses of whatsoever kind or nature, including but not limited to, pre- and post-judgment interest at the maximum rate permitted by law accruing from the date of the breach of the Indemnity Agreement or a breach of other agreements, court costs, counsel fees, costs of investigation, accounting, engineering, construction management and any other outside consulting fees from and against any and all such losses, fees, costs and expenses, which GAIC may sustain or incur by reason or consequence of having issued the Bonds as set forth more fully above and in the Indemnity Agreement.

56. Despite demand, Defendant has failed to place GAIC in such funds in direct contravention of GAIC's *quia timet* rights.

57. Pursuant to the terms of the Bonds, GAIC has guaranteed that if Energes fails to take certain actions, the underlying bonded obligation will become due, and GAIC will pay the debt.

58. Unless GAIC obtains an Order establishing equitable liens, GAIC will not be adequately secured for its obligations under the Bonds.

59. If GAIC is unable to obtain an Order requiring Defendant to place GAIC in collateral as requested in GAIC's demands, GAIC will be irreparably harmed.

60. GAIC is without a plain, speedy, or adequate remedy at law, pecuniary compensation would not afford adequate relief, it would be extremely difficult to ascertain the amount of compensation which would afford adequate relief, and GAIC will be irreparably and permanently injured unless this Court grants the injunctive and equitable relief requested herein.

61. GAIC is entitled to preliminary and permanent injunctive relief enforcing its *quia timet* rights and granting GAIC a valid equitable lien in the Lien Amount upon all assets and real property in which the Defendant has an interest, such liens to remain in place until GAIC has been placed in funds, and restraining Defendant and each of its members from transferring, disposing, or otherwise liquidating any property owned by Defendant, real or personal, beyond reasonable living expenses, during the pendency of this matter.

62. GAIC should also be given a valid equitable security interest in the Lien Amount on any and all rights, title and interest of Defendant in and to all items, property, documents, etc. identified in the Assignment (Third) paragraph of the Indemnity Agreement.

63. Upon information and belief, Defendant has equity in the Property described above and/or have received and continue to receive income and/or other intangible benefits from the operation of Energes as a direct result of GAIC's issuance of the Bonds or other agreements. The interests of equity and fairness dictate that such equity, income and/or other intangible benefits be converted to equitable liens until GAIC is repaid.

## FIFTH CLAIM FOR RELIEF
### (Unjust Enrichment – Equitable Liens)

64. GAIC hereby incorporates by reference the allegations contained above, as though fully set forth herein.

65. GAIC conferred a benefit on Defendant by extending surety credit and/or issuing the Bonds on behalf of Energes.

66. Defendant accepted and appreciated that benefit by profiting from Energes's operations, which would not have been possible without the issuance of GAIC's surety credit and/or the Bonds.

67. Defendant further accepted and appreciated that benefit by virtue of the equity in their real and personal property as a direct result of these profits, which equity would not have been possible without the issuance of GAIC's surety credit and/or the Bonds.

68. Defendant agreed to defend, indemnify, and post collateral with GAIC in exchange for and pursuant to the terms of the Indemnity Agreement.

69. By failing and refusing to do so, Defendant has been and will continue to be unjustly enriched by keeping funds or other collateral to which GAIC is entitled pursuant to the Indemnity Agreement and/or common law.

70. It would be inequitable for Defendant to retain the benefit of GAIC's surety credit and/or the Bonds without complying with their concomitant obligations under the Indemnity Agreement and/or common law to post collateral as promised to protect GAIC from losses.

71. Under these circumstances and given the surety relationship between GAIC and Defendant, general considerations of right and justice dictate that GAIC be granted the right to have Defendant's assets applied to their obligation to post collateral with GAIC.

## SIXTH CLAIM FOR RELIEF
### (Declaratory Relief - Assignment)

72. GAIC incorporates by reference the allegations contained above, as though fully set forth herein.

73. An actual and substantial dispute exists between GAIC and Defendant with respect to GAIC's right to be placed in funds and indemnified from loss under the Bonds.

74. A prompt and judicial determination of the respective rights of the parties in these respects is necessary and appropriate.

75. Pursuant to the Indemnity Agreement, Defendant assigned certain rights to GAIC, and the assignments have been triggered by Defendant's defaults under the Bonds and Indemnity Agreement.

76. GAIC seeks a declaratory judgment that any and all of the assignment provisions have been triggered and the assignments should be effectuated and enforced until such time that the Lien Amount is satisfied and such amount is paid in good funds to GAIC.

### IV.    CONCLUSION

WHEREFORE, for the foregoing reasons, GAIC requests judgment against Defendant as follows and for such further relief as the Court deems proper:

- For all losses, expenses, costs and attorney's fees, plus pre- and post-judgment interest at the maximum rate allowed by law, incurred by GAIC as a result of Defendant's breach of the Indemnity Agreement, as well as specific performance of the same;

- For Defendant to indemnify and hold GAIC harmless from and against any and all liabilities, losses and expenses of any kind of nature, including, but not limited to, interest, court

costs, expenses and attorney fees, imposed upon, sustained or incurred by GAIC on account of the issuance of the Bonds;

- Due to Defendant's failure or inability to place GAIC in sufficient funds, GAIC requests an equitable lien in the Lien Amount (including attorney's fees, costs, and expenses) to be placed on any real property owned in whole or in part by Defendant;

- GAIC requests a valid security interest, as collateral security in the Lien Amount, on any and all rights, title and interest of Defendant in and to all items, property, documents, etc. identified in the Assignment (Third) paragraph of the Indemnity Agreement.

- For preliminary and permanent injunctive relief requiring Defendant to grant access to books and records and to place GAIC in funds by money, property, liens or security interests in real or personal property, as determined by GAIC, and restraining each of Defendant's members from transferring, disposing or otherwise liquidating any property, real or personal, beyond reasonable living expenses, during the pendency of this matter;

- For such further relief as the Court deems just and proper.

Respectfully submitted this 18th day of October, 2019.

              THE HUSTEAD LAW FIRM
                *A Professional Corporation*

              *The Original Signature is on File at*
              *The Hustead Law Firm, A Professional Corporation*

              *s/Connor L. Cantrell, Esq.*
              Patrick Q. Hustead, Esq.
              Connor L. Cantrell, Esq.
              *Attorneys for Plaintiff*

<u>Address of the Plaintiff:</u>
301 E. Fourth St.
Cincinnati, OH 45202